IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HENRY RENKEN, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| v. | ) | No. 08-CV-3016 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Honorable David H. Coar |
| | ) | |
| *Respondent*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court is a motion to vacate, set aside, or correct a sentence filed by Henry Renken ("Renken") pursuant to 28 U.S.C. § 2255. For the reasons set forth below, this motion is DENIED.

## FACTS

On November 13, 2002, a tall masked man wearing green, hooded, and fur-trimmed parka drew a gun and robbed the Gurnee branch of NorthSide Community Bank. A teller observed the man making his getaway on a bicycle. After an arriving police officer realized that he had just passed a cyclist in a green parka headed toward a bike path, he backtracked and found the bicycle. It lay abandoned 20 yards away from a green Chevy Blazer registered to Renken's wife.

About three hours later, Chief Kevin Tracz, handler of a trained bloodhound, arrived at the scene. Tracz offered the bloodhound the bicycle seat for a scent. After being issued the "find" command, the dog immediately led Tracz to the Blazer. Before the bloodhound had begun its work, a police officer, wearing gloves and taking to care to avoid touching the bike seat, had moved the bicycle from its original location to a spot nearer to the Chevy Blazer, then back again.

After determining that Renken's wife owned the Chevy Blazer, a team of federal and local law enforcement officers converged on Renken's home in Lake Bluff. Three officers approached the front door, entering after Renken's wife answered. It is disputed whether she expressly gave them permission to do so.

Renken was showering upstairs at the time. After he finished, FBI agents escorted Renken downstairs to the kitchen, where they found a green parka matching the description of the jacket worn by the bank robber. Before heading downstairs, a detective observed socks and shoes sullied with bits of dried leaves and branches in the bathroom.

Without issuing *Miranda* warnings, the agents questioned Renken about the robbery. He initially denied involvement. After the police confronted him with several pieces of evidence linking him to the crime, Renken confessed and revealed the location of the gun and money. He was then advised of his *Miranda* rights, after which Renken gave a detailed oral confession and signed a written statement. He also signed a consent form authorizing the search his house and the Chevy Blazer. The police found the gun and money in the woods, where Renken had indicated they would. Renken had consumed a single beer that day.

Renken was charged with bank robbery and using a firearm during a crime of violence. Before the trial, Renken moved for the suppression of his confessions, the evidence seized as a

result of those confessions, and the signed consent to search, arguing that his Fourth and Fifth Amendment rights were violated. After a January 30, 2004 hearing, this Court suppressed the incriminating statements petitioner had made when confronted at his home on November 13, 2002. On September 2, 2004, petitioner filed a motion to suppress the physical evidence that had been seized on the date of his arrest. This Court denied the motion on October 27, 2004. On the same day, the Court granted the government's motion seeking the admission into evidence of certain physical and testimonial evidence deriving from petitioner's second confession.

A jury trial commenced on February 7, 2005. On February 9, this Court held a hearing outside the presence of the jury and denied petitioner's motion to exclude testimony offered by Tracz, the bloodhound handler.

On February 15, 2005, the jury convicted petitioner on both counts. On June 8, 2005, this Court sentenced petitioner to consecutive terms of imprisonment of fifty months on the bank robbery count and eighty-four months on the firearm count. Petitioner was ordered to pay a criminal fine of $25,000, as well as restitution to the bank and bank employee he robbed.

Petitioner appealed his conviction. The Court of Appeals affirmed the conviction, holding that (1) this Court did not clearly err when finding that Renken's wife voluntarily consented to the officers entering petitioner's residence; (2) this Court did not clearly err when finding that, under the totality of circumstances, petitioner voluntarily provided written consent for the police to search both his residence and the Chevy Blazer; and (3) this Court did not abuse its discretion by admitting the testimony of Tracz, a decision that, at most, amounted to harmless error because the evidence against petitioner was overwhelming. *United States v. Renken*, 474 F.3d 984, 984-89 (7th Cir. 2007). Petitioner's petition for writ of certiorari was denied by the Supreme Court

on October 1, 2007. *Renken v. United States*, 128 S.Ct. 135 (2007). Petitioner's § 2255 motion is timely. *Horton v. United States*, 244 F3d 546,551 (7th Cir. 2001).

**STANDARD OF REVIEW**

Under 28 U.S.C. § 2255, federal prisoners can challenge the imposition or length of their detention if their conviction or their sentence is based on an error that is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1995) (internal quotations and citations omitted). If the reviewing court determines that any such defect exists in the judgment or sentence, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

In addition, after reviewing the Petitioner's motion, the government's response, and any record of prior court proceedings, the court will determine whether an evidentiary hearing is required. *See* Rule 8(a) of the Rules Governing Section 2255 Proceedings. "If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the [court] shall make an order of summary dismissal." *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings; *Liss v. United States*, 915 F.2d 287, 290 (7th Cir. 1990).

**ANALYSIS**

Defendant claims that (1) the search and seizure of his residence and Chevy Blazer was unconstitutional ("Claim I"); (2) his conviction was obtained by tainted evidence through the admission of Chief Tracz's testimony ("Claim II"); (3) his constitutional rights were violated when the Court limited the scope of his wife's testimony at his suppression hearing, then held on a separately briefed motion that she consented to the police officers' entry and seizure of their home ("Claim III"); and (4) he was denied effective assistance of counsel at the suppression hearing and at the pre-trial motion stage ("Claim IV").

A petition under 28 U.S.C. § 2255 is "neither a recapitulation of nor a substitute for a direct appeal." *Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007) (citations omitted). Where there are no changed circumstances in fact or law, the Court may refuse to reconsider issues already decided on direct appeal. *See Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995); *Varela,* 481 F.3d at 935-36. If a petitioner seeks to bring a constitutional challenge not raised on appeal, he must demonstrate either: (1) good cause for his failure to raise the claims on direct appeal and actual prejudice from the failure to raise those claims, or (2) that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United* States, 75 F.3d 1174, 1177 (7th Cir. 1996) (quotation marks omitted); *see also Bousley v. United States*, 523 U.S. 614, 622 (1998). To benefit from the fundamental miscarriage of justice exception, a petitioner must present "new reliable evidence" of his innocence, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" that makes it more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo,* 513 U.S. 298, 324, 327-28 (1995). A failure to show cause and prejudice or establish a fundamental miscarriage of justice will lead to the claim's procedural default. *See Withrow v. Williams,* 507 U.S. 680, 721 (1993).

5

Renken first claims that his Fourth Amendment rights were violated when law enforcement officers entered and searched his home without his or his wife's voluntary consent (Claim I). This claim is barred because it was decided on the merits by the Seventh Circuit on direct appeal. *Renken*, 474 F.3d at 987-88. Renken seeks to reargue the issue with an added twist – he now alleges that his wife was suffering from a painful muscular disorder and took pain and sleep medication that day, which interfered with her judgment and reaction time. However, this unsupported allegation does not amount to a change in the factual or legal landscape meriting reconsideration of issues previously decided by the Court of Appeals. While Renken's wife was ultimately diagnosed with fibromyalgia after the conclusion of trial, she allegedly suffered its symptoms for at least ten years. Renken's allegations further reveal that he knew of his wife's pain, fatigue, and medication use prior to trial. Indeed, it is his attorney's failure to raise these issues, despite Renken's insistence, that forms the grounds for Renken's ineffective assistance of counsel claim. In short, because the circumstances have not changed, this Court will not reconsider a claim already decided on direct appeal.

As an apparent aside, Renken adds that his consent to search his wife's Chevy Blazer was invalid because he neither owned nor was in control of the vehicle at the time he signed the form. Assuming without deciding the truth of his assertions,[1] Renken lacks standing to bring such a claim. "[C]apacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *see also Rawlings v. Kentucky,* 448 U.S. 98, 106 (1980). If Renken honestly seeks to advance the argument that he neither

---

[1] The facts suggest that Renken exercised common authority over his wife's Chevy Blazer. The keys to the car were in Renken's pants pocket, and his wallet and other personal items were found inside the vehicle. Given that Renken was left without a ride home once he fled the wooded area where the Blazer was parked (he called a friend to pick him up), it was most likely Renken who drove the car to the bike path, intent on using it to effectuate his getaway.

6

owned nor exercised control over the Chevy Blazer, then he has no legitimate expectation of privacy in the vehicle and cannot challenge the constitutionality of the search. At any rate, this particular claim, if formally raised, would be procedurally defaulted.

In Claim II, Renken asserts that the Court should have excluded Tracz's testimony, given the contamination of the search area. Here, Renken does not even attempt to bring anything new to the argument previously disposed of by the Seventh Circuit. The claim is thus barred because it was reviewed on the merits on direct appeal. *See Withrow*, 507 U.S. at 720-21; *Olmstead*, 55 F.3d at 319; *Varela,* 481 F.3d at 935-36.

Claim III alleges that the Court violated his constitutional rights by prohibiting testimony on his wife's state of mind during his suppression hearing, before finding, on a separately briefed motion, that she had consented to the officers' entry and seizure of their home. On January 30, 2004, the Court held a hearing on the voluntariness of Renken's inculpatory statements and consent. During the proceedings, Renken's counsel attempted to question Mrs. Renken about her state of mind on the night of the robbery. (Jan. 30, 2004 Tr. 73:11-12.) The government objected, stating that "[t]his hearing is about the voluntariness of the statements given by Mr. Renken, not what happened by Mrs. Renken in another room of the house that Mr. Renken may have no idea what's going on." (*Id.* at 73:14-17.) The Court sustained the objection, ruling that "[h]er state of mind is irrelevant." (*Id.* at 73:20.) Approximately eight months later, on September 2, 2004, Renken moved to suppress the physical evidence recovered on the night of the robbery, on the grounds that his wife did not consent to the officers' entry. After the issue was fully briefed, the Court denied the motion, concluding that Renken's wife "gave some kind of implied consent to entry, even if there was no verbal assent to their request to speak to her husband." *U.S. v. Renken*, No. 02-CR-1099, Mem. Op. and Order at 8 (Oct. 27, 2004). Renken

argues that his wife should have been permitted to describe her state of mind at the suppression hearing, because such evidence would have been relevant to the Court's later finding that she had consented to the officers' entry.

Without attempting to understand how limiting the scope of testimony at Renken's suppression hearing renders the Court's opinion on a separately briefed issue unconstitutional, the Court notes that the conduct Renken complains of is contained entirely within the record. He therefore could have raised the claim on direct appeal, but failed to do so. Consequently, Renken's third claim is procedurally defaulted.

In an attempt to show cause and prejudice, Renken attributes this omission to the ineffectiveness of his counsel. Oddly, in Renken's ineffective assistance of counsel claim, he does not cite a failure to raise issues on direct appeal as one of his lawyer's errors. Rather, Renken only complains of his lawyer's failure to raise issues during Renken's suppression hearing and pre-trial motions. Even if his attorney bore direct responsibility for this particular omission, the shortcomings of Renken's counsel cannot provide cause for his defaulted claim because, as discussed below, Renken was not denied effective assistance of counsel within the meaning of the Sixth Amendment. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington, supra,* we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default."). Renken has further failed to show that the Court's refusal to consider his claim would lead to a fundamental miscarriage of justice. He cannot avoid procedural default on Claim III.

Claim IV, alleging ineffective assistance of counsel, is properly before the Court. Ineffective assistance of counsel claims, which often rely on evidence outside the record, are

preferably brought in a § 2255 motion because the Court of Appeals is limited to reviewing events contained in the record. *See Massaro v. United States,* 538 U.S. 500, 504-05 (2003); *Fountain v. United States,* 211 F.3d 429, 433-34 (7th Cir. 2000).

Renken claims that his counsel was ineffective at the suppression hearing for failing to question his wife about her physical condition and the medication she was taking on the day of the robbery. Counsel failed to do so despite hearing repeatedly from Renken that she was very tired, in pain, and had used Vicodin. In addition, Renken's counsel failed to move for a hearing on whether his wife consented to the entry of the police, failed to introduce evidence that Renken himself was under the influence of Vicodin and alcohol when he signed the consent form, and offered only "conclusory and rhetorically weak" (in the words of the Court) arguments that Renken's wife was coerced and intimidated into permitting the entry of the law enforcement officers.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness" and "any deficiencies in counsel's performance [were] prejudicial to the defense . . . . " *Strickland v. Washington,* 466 U.S. 668, 687-88, 692 (1984). With regard to the first prong, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Courts reviewing claims of ineffective assistance of counsel "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citations omitted). With regard to the second prong, a showing of prejudice requires a reasonable probability that, but for the attorney's mistakes, the result of the proceeding

9

would have been different. *Strickland,* 466 U.S. at 694. A reasonable probability means "a probability sufficient to undermine confidence in the outcome." *Id.*

The methods chosen by Renken's counsel for arguing that the police unlawfully entered Renken's home were reasonable. The government points out that counsel's decision not to pursue a line of questioning or request a hearing on whether Renken's wife was fatigued, in pain, and drugged up when she answered the door may have been sound trial strategy. To have raised the matter might have diminished the effectiveness of her testimony by casting doubt on her powers of observation and recollection. Moreover, being under the influence of medication does not necessarily eliminate a person's ability to give voluntary consent; other factors must also be considered before arriving at such a conclusion. *See U.S. v. LaGrone*, 43 F.3d 332, 334 (7th Cir. 1994) (holding that the voluntariness of consent should be assessed in light of "the totality of the circumstances"); *U.S. v. Hauser*, No. 08-CR-56, 2008 WL 4642250, at *3, 14 (E.D. Wis. Oct. 17, 2008) (finding that defendant voluntarily consented to the search of her residence despite taking prescription medications at the time). When deciding against questioning Renken's wife on the matter, counsel might have concluded that the effects of her medication, fatigue, and pain were wholly inadequate to compromise her ability to voluntarily consent.

It also bears noting that the Court's description of the parties' coercion and intimidation arguments as "conclusory and rhetorically weak" applied equally to Renken and the government, suggesting that the issue was challenging for all involved. *U.S. v. Renken*, No. 02-CR-1099, Mem. Op. and Order at 8 (Oct. 27, 2004). In any event, "[j]udges must not examine a lawyer's error (of omission or commission) in isolation . . . . It is essential to evaluate the entire course of the defense, because the question is not whether the lawyer's work was error-free . . . but whether the defendant had the 'counsel' of which the Sixth Amendment speaks." *Williams v. Lemmon,*

10

557 F.3d 534, 538 (7th Cir. 2009) (citing *Strickland* at 690-96). Either of the scenarios discussed above do not detract from the presumption that Renken's counsel exercised reasonable judgment throughout Renken's case.

As for Renken's written consent, it is not a given that Renken's consumption of a beer and Vicodin earlier that day undermined his ability to voluntarily consent when he signed the form. Perhaps his counsel reasonably believed that, in light of the totality of the circumstances, pressing the issue was futile. At any rate, Renken is unable to show that he was prejudiced by the evidence produced by the search of his home or car. As the Seventh Circuit noted, "the government presented a mountain of incriminating evidence: six eyewitnesses from the bank who attested to various aspects of the robber's appearance, including his height, gender, and the green parka with fur-trimmed hood and black gloves that he was wearing; a police officer who noticed and followed the trail of a man wearing a green hooded parka and riding a green bicycle; the testimony of Renken's son that his father owned a green mountain bike; the bike itself was found so close to the Blazer; . . . a duffel bag found in the wooded area containing over $18,000 in cash and a Harley Davidson black leather glove; testimony that the recovered cash included the bait bills recorded by the bank; a .22 Lugar handgun also recovered from the wooded area, shown to have been purchased by a Ruth V. Renken [Renken's mother] in 1973 and recalled by Henry Renken's ex-wife from their past visits to Ruth Renken's home," and so on. *Renken*, 474 F.3d at 989. The evidence against Renken would have been overwhelming even absent the physical evidence secured through his written consent. Renken cannot show that he was prejudiced by his counsel's purported error.

Given the above, Renken is not entitled to a certificate of appealability. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the

11

applicant." Rule 11(a), RULES GOVERNING § 2255 PROCEEDINGS (Eff. Dec. 1, 2009). A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds . . . a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). It is evident that the Seventh Circuit has already decided Claims I and II. The Court need not rehash them in a §2255 motion. The procedural default of Claim III is also undeniable; Renken failed to raise it on direct appeal. Finally, Renken has not made a substantial showing of a denial of his Sixth Amendment rights in Claim IV. No reasonable jurist could find that Renken was denied effective assistance of counsel within the meaning of *Strickland*.

## CONCLUSION

For the foregoing reasons, Renken's motion under 28 U.S.C. § 2255 is DENIED.

Enter:

/s/ David H. Coar

_____
David H. Coar
United States District Judge

Dated: **April 22, 2010**